1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RUBEN VALDEZ,

               Plaintiff,

    v.

JEFFREY BEARD,

            Defendant.

**1:14-cv-01839-MJS (PC)**

**ORDER**

   **(1) GRANTING PLAINTIFF'S MOTION TO CORRECT HIS OPPOSITION;**

   **(2) DENYING PLAINTIFF'S MOTION TO FILE AN AMENDED COMPLAINT;**

   **(3) DIRECTING CLERK OF COURT TO ASSIGN A DISTRICT JUDGE TO THIS CASE; AND**

**FINDINGS & RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS**

**(ECF Nos. 26, 32, 33)**

**THIRTY-DAY DEADLINE**

## I.   INTRODUCTION

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This case is before the Court on Defendants' motion to dismiss and Plaintiff's motion for leave to file a Fourth Amended Complaint. (ECF Nos. 26, 33.)

## II.   PROCEDURAL HISTORY

Plaintiff initiated this action on November 21, 2014, and filed a First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a) on January 23, 2015. (ECF Nos. 1, 8.) This complaint was screened and found to state a due process claim against

1

Defendants Lambert, Mahoney, Cano, Kraay, Galaviz, Rousseau, Gipson, Taber, Sanchez, Pina, Pacillas, Lackovic, Smith, Kellogg, McGuire, Mayo, Mata, Holland, Prince, and Chavez. (ECF No. 11.) Plaintiff was directed to file a notice of his willingness to proceed on his screened amended complaint or to file a Second Amended Complaint.

On June 25, 2015, Plaintiff filed a Second Amended Complaint. (ECF No. 14.) This pleading was screened and again found to state only a due process claim against the previously-identified Defendants as well as three additional individuals. (ECF No. 15.) Plaintiff was once again directed to file a notice of his willingness to proceed on his pleading as screened or file a Third Amended Complaint. Plaintiff was informed that he would be given one final opportunity to amend.

On August 24, 2015, Plaintiff filed the operative pleading, his Third Amended Complaint. (ECF No. 16.) The Court's screening of this pleading revealed due process and equal protection claims against Defendants Beard, Castorena, Escobar, Lambert, Mahoney, Cano, Kraay, Galaviz, Rousseau, Gipson, Taber, Jennings, Sanchez, Pina, Pacillas, Lackovic, Smith, Kellogg, McGuire, Mayo, Mata, Holland, Prince, Chavez, Vasquez, Edgar, Garcia, Mayfield, and Patterson. (ECF No. 18.) Plaintiff was directed to submit service documents, and on November 2, 2015, the United States Marshal was directed to serve the 29 Defendants. (ECF No. 22.)

On January 6, 2016, Defendants appeared in the action by filing a motion to dismiss the Third Amended Complaint. (ECF No. 26.) Plaintiff filed opposition[1] and on April 1, 2016, filed a motion for leave to file a Fourth Amended Complaint. (ECF No. 33.) Defendants oppose this request. Both matters are deemed submitted and ready for disposition.[2]

---

[1] On April 1, 2016, Plaintiff filed a motion to correct his opposition. (ECF No. 32.) Good cause appearing, this request will be granted.

[2] On May 10, 2016, Plaintiff was granted a thirty-day extension of time to file a reply to Defendants' opposition to his motion to amend. (ECF Nos. 38, 39.) The deadline for filing his opposition has now passed, and Plaintiff has not filed a reply or otherwise responded to the Court's order. Accordingly, the Court deems the matter fully submitted.

2

### III.   **ALLEGATIONS IN THIRD AMENDED COMPLAINT**

At all times relevant to this action, Plaintiff was housed at California State Prison in Corcoran, California ("CSP-Cor"). Plaintiff's Third Amended Complaint identifies Secretary of Corrections Jeffrey Beard; Chief Deputy Wardens R. S. Lambert, E. Vasquez, and M. Jennings; Psychologists J. Mahoney, J. Edgar, and D. Prince; Institutional Gang Investigators A. Mayo, J.C. Garcia, and S. Pina; Assistant Institutional Gang Investigator J. Cano; Sergeants T. Kraay, J. Taber, H. Holland, and A. Kellogg; Correctional Counselors T. Galaviz, P. Sanchez, A. Pacillas, K. Mata, R. Chavez, D. Mayfield, D. Patterson, and D. McGuire; Captain S. Rousseau; Warden C. Gipson; Dr. A. Lackovic; Associate and Chief Deputy Warden J. Smith; and Classification Staff Representatives M. Escobar and B. Castorena as Defendants.

Plaintiff's allegations can be summarized essentially as follows:

On February 5, 2010, while Plaintiff was housed at California State Prison in Sacramento, California ("CSP-Sac"), he was validated as a gang member due to his alleged membership in the Northern Structure prison gang, and he was placed in the Security Housing Unit ("SHU").

In July 2012, Plaintiff was transferred to CSP-Cor where he continued indefinite confinement in the SHU based on the gang validation. At issue here are Defendants' periodic reviews of the gang validation and SHU housing assignment.

On August 2, 2012, following Plaintiff's arrival at CSP-Cor, Defendants Lambert, Mahoney, Cano, Kraay, Galaviz, and Rousseau conducted an "initial SHU review" of Plaintiff's case and decided to retain him in the SHU.  Plaintiff was not assigned a special investigator for the hearing or given the opportunity to dispute his gang involvement or present evidence or witnesses.  Defendants did not re-examine or re-assess any of the evidence against Plaintiff. The 128-G chrono noted Plaintiff's disagreement with the decision and validation.

On December 20, 2012, Plaintiff appeared before the classification committee for a "180-day review." Defendants Gipson, Mahoney, Taber, Sanchez, Pina, and Pacillas

committed the same violations as identified supra.

On June 20, 2013, Plaintiff appeared before the classification committee for an "Annual Review" where he submitted a one-page document challenging his SHU retention but Defendants Gipson, Lackovic, Smith, Kellogg, McGuire, Mayo, Pacillas, and Mata refused to consider it. These Defendants committed the same violations as identified supra.

On July 23, 2013, Defendant Escobar approved Plaintiff's retention in the SHU based on the classification committee action of June 20, 2013.  Defendant Escobar did not provide Plaintiff with a hearing, an investigative employee, or an opportunity to dispute his gang involvement or to present witnesses or evidence.

On January 28, 2014, Plaintiff appeared before the classification committee for a "180-day review." Defendants Smith, Holland, Prince, Pina, Galaviz, and Chavez reviewed Plaintiff's case and again retained him in the SHU for an indeterminate term. Defendants did not permit Plaintiff to dispute the evidence of his gang involvement, present witnesses or evidence, or assign him an investigative employee.

On June 24, 2014, Plaintiff appeared before the classification committee for an "Annual Review." Defendants Jennings, Holland, Prince, Pina, Galaviz, and Chavez committed the same violations during Plaintiff's annual review.

On October 6, 2014, Defendant Castorena approved the retention of Plaintiff in SHU without a hearing or other opportunity for Plaintiff to object based on the classification committee action of June 24, 2014.

On January 7, 2015, Plaintiff appeared before the classification committee for a "180-day review." Defendants Vasquez, Holland, Garcia, Edgar, Patterson, and Mayfield committed the same violations.

Plaintiff claims that none of these reviews was constitutionally meaningful. The above named Defendants were acting in accordance with Defendant Beard's unconstitutional policy requiring segregation of gang affiliated inmates from the general population for an indeterminate term without evidence of misconduct.  Defendant Beard

4

was aware of Plaintiff being subjected to this policy based on Plaintiff's appeals and still failed to change the policy or correct his subordinates' unconstitutional conduct.  The policy violates an inmate's right to freedom of association, does not serve a legitimate penological objective, and discriminates against prison gang members.

Plaintiff has not had any disciplinary action taken against him since 2009.  He has never been found guilty of gang activity or participation in any gang-related conspiracies. However, because of his placement in the SHU, Plaintiff is subject to gang sanctions. He is confined to his 7 x 11 foot cell for approximately 159 hours per week with no periods of darkness.  The food has made Plaintiff sick.  His mattress is thin and he is not allowed a pillow. He has limited access to medical services, showers, and the library. His yard space and allowable activities are limited. Numerous restrictions are placed on his visitation.  He can only receive one personal property package per year.  He is subjected to extensive searches prior to and after transport from his cell.

## IV.   NOTICE OF RELATED CASE

On December 7, 2015, Defendants filed a Notice of Related Case, in which they identify an earlier case filed by Plaintiff, Valdez v. Cate, 2:12-cv-1352-CMK, against 23 Defendants at CSP-Sac concerning the initial investigation and determination of gang membership and related SHU assignment. (ECF No. 23.) In this case, Plaintiff brings suit against Defendants at CSP-Cor concerning his continuing SHU term based on gang membership and the periodic reviews thereof. Though there are certainly similarities between the two cases, the Court concludes that there are sufficient differences to maintain separate, unrelated actions. See E.D. Cal. Local Rule 123(a).

## V.   PLAINTIFF'S MOTION TO AMEND

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend his pleading once as a matter of course at any time before a responsive pleading is served. Otherwise, a party may amend only by leave of the court or by written consent of the adverse party. Fed. R. Civ. P. 15(a). Rule 15(a)(2) directs courts to freely give leave to amend a pleading "when justice so requires." The court should apply this policy "with

1
2
3
4
5

extreme liberality." <u>Owens v. Kaiser Found. Health Plan, Inc.</u>, 244 F.3d 708, 712 (9th Cir. 2001) (quoting <u>Morongo Band of Mission Indians v. Rose</u>, 893 F. 2d 1074, 1079 (9th Cir. 1990)). "If the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." <u>Forman v. Davis</u>, 371 U.S. 178, 182 (1962).

6
7
8
9
10
11
12
13

However, a district court may deny leave to amend where there is "'any apparent or declared reason' for doing so, including undue delay, undue prejudice to the opposing party or futility of the amendment." <u>Lockman Found. v. Evangelical Alliance Mission</u>, 930 F.2d 764, 772 (9th Cir. 1991) (quoting <u>Forman</u>, 371 U.S. at 182). These factors are not to be given equal weight. <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003). Prejudice to the opposing party must be given the greatest weight. <u>Id.</u> "Absent prejudice, or a strong showing of any of the remaining <u>Forman</u> factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." <u>Id.</u>

14
15
16

In his one-paragraph motion to amend, Plaintiff moves for leave to file a Fourth Amended Complaint to "add facts in support of his claims which he believes may correct any deficiencies…." (EC No. 33 at 1.)

17
18
19
20
21
22
23
24
25
26
27

Generally, a motion to the Court (1) must be in writing; (2) must state with particularity the grounds for seeking the order; and (3) must state the relief sought. Fed. R. Civ. P. 7(b)(1). A moving party is required to state the grounds for its motion to amend "with particularity." <u>Waters v. Weyerhauser Mortgage Co.</u>, 582 F.2d 503, 507 (9th Cir. 1978). Merely requesting leave to amend without indicating the grounds for the amendment, as Plaintiff does here, does not constitute a motion within the requirements of Rule 15(a). <u>U.S. Care, Inc. v. Pioneer Life Ins. Co. of Illinois</u>, 244 F. Supp. 2d 1057, 1065 (C.D. Cal. 2002). <u>See also</u> <u>Evans v. Pearson Enterprises, Inc.</u>, 434 F.3d 839, 853 (6th Cir. 2006); <u>Confederate Memorial Ass'n, Inc. v. Hines</u>, 995 F.2d 295, 299 (D.C. Cir. 1993); <u>AT&T Corp. v. American Cash Card Co.</u>, 184 F.R.D. 515, 521 (S.D.N.Y. 1999). Because Plaintiff's motion does not meet this basic requirement, it can be denied on this procedural ground alone. <u>U.S. Care</u>, 244 F. Supp. 2d at 1065.

28

1
2
3
4
5
6
7
8

Plaintiff's motion is also subject to denial as futile. Review of the lodged pleading reveals a Fourth Amended Complaint that is virtually identical to the Third. It appears Plaintiff has simply submitted a photocopy of most of the operative pleading asserting the same claims against the same 29 Defendants. Limited new facts describe myriad ways in which gang validation prevents full participation in programs and activities at CSP-Cor and thus relate to his existing Equal Protection claim. Plaintiff also alleges facts related to CSP-Sac's initial gang validation, the subject of Plaintiff's earlier case, Valdez v. Cate, 2:12-cv-1352-CMK, and thus subject to dismissal here as duplicative.

9
10
11
12
13
14
15
16
17
18
19
20
21
22

Finally, to the extent Plaintiff's Fourth Amended Complaint can be construed as seeking to assert an Eighth Amendment SHU "conditions of confinement" claim, no such claim will lie on such facts. "It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Farmer v. Brennan, 511 U.S. 825, 832 (1994). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995); see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

23
24
25
26
27

When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the Court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. See Toussaint, 801 F.2d at 1107; Hoptowit, 682 F.2d at 1246-47; Wright, 642 F.2d at 1133. "Some conditions of confinement may establish an Eighth Amendment violation 'in

28

combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991); see also Thomas v. Ponder, 611 F.3d 1144, 1151 (9th Cir. 2010); Osolinski, 92 F.3d at 938-39; Toussaint, 801 F.2d at 1107; Wright, 642 F.2d at 1133. When considering the conditions of confinement, the Court should also consider the amount of time to which the prisoner was subjected to the condition. See Hutto v. Finney, 437 U.S. 678, 686-87 (1978); Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005); Hoptowit, 682 F.2d at 1258. As to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to unconstitutional conditions of confinement to establish an Eighth Amendment violation. See Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303. This Court has found that "placement of seriously mentally ill inmates in the harsh, restrictive and non-therapeutic conditions of California's administrative segregation units for non-disciplinary reasons for more than a minimal period necessary to effect transfer to protective housing or a housing assignment violates the Eighth Amendment." Coleman v. Brown, 28 F. Supp. 3d 1068, 1099 (E.D. Cal. 2014).

Plaintiff's conditions of confinement claim was previously dismissed for failure to state a claim because each condition, considered separately, did not violate the Eighth Amendment and none, in combination, had a mutually enforcing effect producing the deprivation of a single, identifiable human need. (ECF No. 15.) Plaintiff also failed to assert the claim against any named Defendant.

Plaintiff has not cured these deficiencies in the Fourth Amended Complaint. The mere fact that the conditions in the SHU are more restrictive than those provided the general population does not state a conditions of confinement claim. Plaintiff has not alleged any excessive risk to his health or safety resulting from the SHU term; has not alleged that Defendants were aware of any such risks but failed to take measures to abate them; and has not shown that the conditions deprived him of basic human needs.

8

1
2
3
4
5
6
7

It is well established that "administrative segregation ... is within the terms of confinement ordinarily contemplated by a sentence." Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Such conditions, including confinement in a cell for most of the day, do not violate the Eighth Amendment. Id.; see also Perkins v. Crum, No. 11–16903, 2012 WL 3301023 at *1 (9th Cir. Aug. 8, 2012) (district court properly dismissed Eighth Amendment claim regarding conditions in SHU); Pina v. Scavetta, No. 10–16749, 2012 WL 210883 at *1 (9th Cir. 2012) (same).[3]

8

For these reasons, Plaintiff's motion to amend will be denied.

9

## VI.   DEFENDANTS' MOTION TO DISMISS

10

### A.   Legal Standards

11
12
13
14
15
16

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall, 629 F.3d at 998.

17
18
19
20
21
22
23
24

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party. Daniels-Hall, 629 F.3d at 998. Pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm, 680 F.3d at 1121.

25
26
27

In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall, 629 F.3d at 998. However, courts may properly consider matters subject to judicial notice and documents incorporated by reference in

28

---

[3] Citations to these latter unpublished decisions is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1
2
3

the pleading without converting the motion to dismiss to one for summary judgment. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 1986); Mack v. S. Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

4

**B.    Discussion**

5

**1.    Due Process**

6
7
8
9
10
11
12

When placement in administrative segregation impairs an inmate's liberty interest, the Due Process Clause requires prison officials to provide the inmate with "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation."[4] Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Toussaint v. McCarthy, 801 F.2d 1080, 1099 (9th Cir. 1986), overruled on other grounds by Sandin v. Connor, 515 U.S. 471 (1995)).

13
14

In addition to the notice and opportunity for presentation requirements, due process requires prison officials have an evidentiary basis for their decision to place an

15
16
17
18
19
20

---

[4] The Court notes in passing that the Ninth Circuit Court of Appeals recently held that a state prisoner's challenge to his gang validation and indefinite SHU placement was properly brought in a habeas corpus action. See Nettles v. Grounds, 788 F.3d 992 (9th Cir. 2015), rehearing en banc granted 810 F.3d 1138 (9th Cir. Jan. 20, 2016.). In Nettles, prison officials validated inmate Santos as a member of the Mexican Mafia, removed him from the general prison population, and confined him in the SHU indefinitely. Id. at 997. Santos unsuccessfully administratively appealed his gang validation and then sought habeas corpus relief in state court to no avail. Id. Santos then filed a federal habeas corpus petition challenging his gang validation as a violation of his right to due process. Id. The district court dismissed the petition on the grounds that Santos's claims concerned his conditions of confinement rather than the fact or duration of his confinement. Id. Reversing, the Ninth Circuit Court of Appeals explained:

21
22
23
24

> The remedy Santos seeks of expungement of the gang validation from his record and release from the SHU to the general prison population, "can fairly be described as a quantum change in the level of custody." See id. at 381. Additionally, success on his claim would result in his immediate release from the SHU to the general prison population. His claim that he has been subjected to greater restrictions of his liberty without due process of law is therefore properly brought as a petition for a writ of habeas corpus.

25
26

Id. at 1006 (internal quotations omitted).

27
28

However, because an en banc rehearing has been ordered in that case, Nettles is not binding on this Court. See Fed. R. App. P. 35(a); Ninth Circuit Rule 35-3 ("When the Court votes to rehear a matter en banc … [t]he three-judge panel opinion shall not be cited as precedent by or to this Court or any district court of the Ninth Circuit, except to the extent adopted by the en banc court.")

1
2
3
4
5
6
7
8

inmate in segregation for administrative reasons. See Superintendent v. Hill, 472 U.S. 445, 455 (1985); Toussaint, 801 F.2d at 1104-05. The evidentiary basis is satisfied if there is "some evidence" from which a court can deduce an administrative tribunal's conclusion. Hill, 472 U.S. at 455; Toussaint, 801 F.2d at 1105. The evidence relied upon must have "some indicia of reliability." See Madrid v. Gomez, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995). This "some evidence" test applies to an inmate's placement in SHU for gang affiliation. Castro v. Terhune, 712 F.3d 1304, 1307 (9th Cir. 2013) (citing Bruce, 351 F.3d at 1287).

9
10
11
12
13
14

Finally, due process requires that prison officials engage in some sort of periodic review of an inmate's confinement in segregation. See Hewitt v. Helms, 459 U.S. 460, 477 n.9 (1983), abrogated in part on other grounds by Sandin, 515 U.S. 472; Toussaint, 801 F.2d at 1101. These periodic reviews must be more than "meaningless gestures" to satisfy due process. See Toussaint v. Rowland, 711 F. Supp. 536, 540 n.11 (N.D. Cal. 1989).

15
16
17
18
19
20

Defendants move for dismissal of Plaintiff's due process claim on the ground that Plaintiff's allegations in this action and in his earlier-filed case, Valdez v. Cate, 2:12-cv-1352-CMK, establish that the initial determination regarding Plaintiff's gang membership and the related SHU assignment complied with due process in that Plaintiff received notice, was given a hearing, and had an opportunity to present his objections. Additionally, the decision was supported by some evidence -- Plaintiff's tattoos, certain written materials, and Plaintiff's possession of gang notes.

21
22
23
24
25
26
27
28

However, Plaintiff's claim in this case is distinct from the question of whether he received adequate due process during the initial determination of his gang status and subsequent SHU assignment. Indeed, those claims form the basis of his earlier-filed case. Here, Plaintiff's due process claim focuses on the periodic reviews conducted by Defendants. Plaintiff asserts they were conducted in a rote and perfunctory manner and were thus "meaningless gestures." See Toussaint, 711 F. Supp. at 540 n.11. Due process, of course, requires an opportunity to be heard "in a meaningful manner."

11

1
2
3
4

Mathews v. Eldridge, 424 U.S. 319, 333 (1976); see also Wilkinson, 545 U.S. at 226 ("a fair opportunity for rebuttal"); Madrid v. Gomez, 889 F. Supp. 1146, 1276-77 (N.D. Cal. 1995). As the Madrid court recognized, there is the potential for classification committee proceedings to be "hollow gestures" because of gang policies. Id. at 1276-77.

5
6
7
8
9
10
11
12

Thus, even though Plaintiff is not entitled to Wolff's heightened procedural protections[5], he is entitled to process that is meaningful. In the operative pleading, he claims that the periodic reviews of his gang validation and SHU retention were perfunctory, lasting only 2-5 minutes each; that they were held before individuals who had no authority to release Plaintiff; that he was denied an opportunity to be heard; and that Defendants declined to let him object to the SHU retention and refused to consider a one-page challenge to it that he submitted. Since these claims call into doubt the meaningfulness of the periodic reviews, Defendants' motion to dismiss must be denied.

13
14
15
16
17
18
19

Defendants are also not entitled to qualified immunity on this claim. By 2012, the law was clearly established that due process required that Plaintiff be given notice and a meaningful opportunity to heard before he was validated as a gang associate; that "some evidence" support the decision and that the supporting evidence have some indicia of reliability; and that plaintiff be provided with periodic reviews that were more than meaningless gestures. See Toussaint, 926 F.2d at 802-03; Cato, 824 F.2d at 705; Toussaint, 801 F.2d at 1098-1101; see also Guizar v. Woodford, 2007 WL 951294, at *5

20
21
22

---

[5] Any argument that Plaintiff's indefinite placement in the SHU constitutes an "atypical and significant hardship" requiring heightened procedural protections under Wolff v. McDonnell, 418 U.S. 539 (1974), has been foreclosed by Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997), where the Ninth Circuit held that:

23
24
25
26

> California's policy of assigning suspected gang affiliates to the Security Housing Unit is not a disciplinary measure, but an administrative strategy designed to preserve order in the prison and protect the safety of all inmates. Although there are some minimal legal limitations, see, e.g., Toussaint v. McCarthy, 801 F.2d 1080 (9th Cir. 1986) ..., the assignment of inmates within the California prisons is essentially a matter of administrative discretion.

27
28

Wolff's heightened due process requirements do not apply to challenges to an inmate's gang validation or to indefinite SHU placement. Ylst, 351 F.3d at 1287 (citing Munoz, 104 F.3d at 1098).

(N.D. Cal. Mar. 27, 2007) (denying qualified immunity in gang validation case because "defendants could not have reasonably believed that due process did not require their providing plaintiff with an opportunity to present his views to the officials responsible for placing him in administrative segregation and the SHU"); Tapia v. Alameida, 2006 WL 842470, at *16-17 (E.D. Cal. 2006) (denying qualified immunity in gang validation case where plaintiff argued that he was not given notice and opportunity to be heard regarding initial validation and that post-validation hearings were not meaningful).

## 2.    Equal Protection

The Equal Protection Clause requires the State to treat all similarly situated people equally. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). State prison inmates retain a right to equal protection of the laws guaranteed by the Fourteenth Amendment. Walker v. Gomez, 370 F.3d 969, 974 (9th Cir. 2004) (citing Lee v. Washington, 390 U.S. 333, 334 (1968)). This does not mean, however, that all prisoners must receive identical treatment. See Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972). "In the prison context ... even fundamental rights such as the right to equal protection are judged by a standard of reasonableness—specifically, whether the actions of prison officials are 'reasonably related to legitimate penological interests.'" Walker, 370 F.3d at 974 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)); see also Washington v. Harper, 494 U.S. 210, 224 (1990) (equal protection concerns fall under Turner).

Defendants move for dismissal of this claim on the ground that a rational basis exists for Plaintiff's disparate treatment. They claim that courts routinely find that inmates affiliated with prison gangs pose an immediate threat to safety and security, and therefore any difference in the treatment between inmates who are validated as gang members versus those who are not is reasonably related to legitimate penological interests.

The state clearly has an interest in controlling prison gang activity to advance the legitimate goal of safety and order in the prison. That interest is not only legitimate, it is compelling. See Warsoldier v. Woodford, 418 F.3d 989, 997 (9th Cir. 2005). Here,

insofar as Plaintiff's equal protection claim is premised on the lack of programs and activities available to him as an inmate housed in SHU versus inmates who are housed in general population, this claim fails. Inmates housed in the SHU are not similarly situated with prisoners in the general population because of the higher security risk presented by those placed in the SHU. See Wakefield v. Terhune, 2000 WL 288392, at *5 n.3 (N.D. Cal. Mar. 6, 2000). Plaintiff also asserts the Defendants' treatment of Plaintiff, an administratively segregated discipline-free inmate, is similar to the treatment of inmates who are segregated for disciplinary reasons instead of being treated like other inmates who are discipline free. Even under this phrasing of the claim, Defendants' motion must be granted because the measures taken to isolate gang members (whether disciplinary-free or not) from the general prison population for security reasons (and the resultant reduction in access to programs and activities) are a rational means for furthering the legitimate penological goal of reducing the risk of gang violence. "The general concept of segregating inmates for disciplinary or security reasons is a well-established and penologically justified practice." Madrid v. Gomez, 889 F. Supp. 1146, 1263 (N.D. Cal. 1995). Plaintiff has not alleged any facts to remove his individual housing decision, or other decisions made regarding other inmates, from the range of administrative discretion with respect to the safety and security of the institution. Accordingly, Defendants' motion to dismiss Plaintiff's equal protection claim should be granted.

## VII.   CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to correct his opposition (ECF No. 32) is GRANTED;

2. Plaintiff's motion to amend (ECF No. 33) is DENIED, and the lodged Fourth Amended Complaint is STRICKEN;

3. The Clerk of Court shall assign a district judge to this case; and

It is HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss be GRANTED IN PART and DENIED IN PART

14

as follows:

      a. Be DENIED as to Plaintiff's due process claim;

      b. Be GRANTED as to Plaintiff's equal protection claim; and

2. Defendants be directed to file an answer within thirty days from the adoption of these Findings and Recommendations.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with the findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   June 20, 2016       /s/ Michael J. Seng

UNITED STATES MAGISTRATE JUDGE

15