UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN VALDEZ,<br><br>    Plaintiff,<br><br>v.<br><br>JEFFREY BEARD, et al.,<br><br>    Defendants. | CASE NO. 1:14-cv-01839-AWI-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS NON-COGNIZABLE CLAIMS**<br><br>(ECF No. 16)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF No. 1.) He has consented to Magistrate Judge jurisdiction. (ECF No. 6.) Defendants declined to consent to Magistrate judge jurisdiction. (ECF No. 51.)

The Court screened Plaintiff's third amended complaint (ECF No. 16) and found it states due process and equal protection claims against Defendants Beard, Castorena, Escobar, Lambert, Mahoney, Cano, Kraay, Galaviz, Rousseau, Gipson, Taber, Jennings, Sanchez, Pina, Pacillas, Lackovic, Smith, Kellogg, McGuire, Mayo, Mata, Holland, Prince, Chavez, Vasquez, Edgar, Garcia, Mayfield, and Patterson. (ECF No. 18.) Although not expressly stated, the remaining claims were ostensibly dismissed. Plaintiff

later was permitted to file a fourth amended complaint (ECF Nos. 53, 60), and the action has proceeded since that time on the cognizable claims identified herein. The District Judge has not yet reviewed the dismissal of Plaintiff's non-cognizable claims.

**I.    Williams v. King**

Federal courts are under a continuing duty to confirm their jurisdictional power and are "obliged to inquire sua sponte whenever a doubt arises as to [its] existence[.]" Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278 (1977) (citations omitted). On November 9, 2017, the Ninth Circuit Court of Appeals ruled that 28 U.S.C. § 636(c)(1) requires the consent of all named plaintiffs and defendants, even those not served with process, before jurisdiction may vest in a Magistrate Judge to dispose of a civil claim. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Accordingly, the Court held that a Magistrate Judge does not have jurisdiction to dismiss a claim with prejudice during screening even if the plaintiff has consented to Magistrate Judge jurisdiction. Id.

Here, Defendants were not yet served at the time that the Court screened the third amended complaint and therefore had not appeared or consented to Magistrate Judge jurisdiction. Because Defendants had not consented, the undersigned's dismissal of Plaintiff's claims is invalid under Williams. Because the undersigned nevertheless stands by the analysis in his previous screening orders, he will below recommend to the District Judge that the non-cognizable claims be dismissed.

**II.    Findings and Recommendations on Plaintiff's Third and Fourth Amended Complaints**

The Court dismissed certain claims upon review of the third amended complaint. However, the fourth amended complaint (ECF No. 53) is now the operative pleading. Both complaints are addressed herein.

**A.    Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner

2

has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Pleading Standard

Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights "under color" of state law. 42 U.S.C. § 1983. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### C. Plaintiff's Allegations

Plaintiff identifies Secretary of Corrections Jeffrey Beard; Chief Deputy Wardens

3

R. S. Lambert, E. Vasquez, and M. Jennings; Psychologists J. Mahoney, J. Edgar, and D. Prince; Institutional Gang Investigators A. Mayo, J.C. Garcia, and S. Pina; Assistant Institutional Gang Investigator J. Cano; Sergeants T. Kraay, J. Taber, H. Holland, and A. Kellogg; Correctional Counselors T. Galaviz, P. Sanchez, A. Pacillas, K. Mata, R. Chavez, D. Mayfield, D. Patterson, and D. McGuire; Captain S. Rousseau; Warden C. Gipson; Dr. A. Lackovic; Associate and Chief Deputy Warden J. Smith; and Classification Staff Representatives M. Escobar and B. Castorena as Defendants.

Plaintiff's allegations can be summarized essentially as follows:

Since July 2012, Plaintiff has been confined in the segregated housing unit ("SHU") due to his alleged membership in the Northern Structure prison gang. Plaintiff was denied an opportunity to present evidence, witnesses or his views on the issue prior to his SHU placement.

On August 2, 2012, Defendants Lambert, Mahoney, Cano, Kraay, Galaviz, and Rousseau reviewed Plaintiff's case and decided to keep him in the SHU. Plaintiff was not assigned a special investigator for the hearing or given the opportunity to dispute his gang involvement or present evidence or witnesses. Defendants did not re-examine or re-assess any of the evidence against Plaintiff. On December 20, 2012, Defendants Gipson, Mahoney, Taber, Sanchez, Pina, and Pacillas committed the same violations. On June 20, 2013, Defendants Gipson, Lackovic, Smith, Kellogg, McGuire, Mayo, Pacillas, and Mata committed the same.

On July 23, 2013, Defendant Escobar approved Plaintiff's retention in administrative segregation. Defendant Escobar did not provide Plaintiff with a hearing, an opportunity to dispute his gang involvement, to present witnesses or evidence, or provide him with an investigative employee.

On January 28, 2014, Defendants Smith, Holland, Prince, Pina, Galaviz, and Chavez reviewed Plaintiff's case and retained him in the SHU for an indeterminate term. Defendants did not permit Plaintiff to dispute the evidence of his gang involvement, present witnesses or evidence, or assign him an investigative employee. On June 24,

4

2014, Defendants Jennings, Holland, Prince, Pina, Galaviz, and Chavez committed the same during Plaintiff's annual review. On October 6, 2014, Defendant Castorena approved the retention of Plaintiff in SHU without a hearing or other opportunity for Plaintiff to object. On January 7, 2015, Defendants Vasquez, Holland, Garcia, Edgar, Patterson, and Mayfield committed the same.

The above named Defendants were acting in accordance with Defendant Beard's unconstitutional policy requiring segregation of gang affiliated inmates from the general population for an indeterminate term without evidence of misconduct. Defendant Beard was aware of Plaintiff being subjected to this policy based on Plaintiff's appeals. Despite Plaintiff's appeals, Defendant Beard failed to change the policy or correct his subordinates' unconstitutional conduct. The policy violates an inmate's right to freedom of association, does not serve a legitimate penological objective, and discriminates against identified prison gang members.

Plaintiff has not had any disciplinary action taken against him since 2009. He has never been found guilty of gang activity or participation in any gang-related conspiracies. However, because of his placement in the SHU, Plaintiff is subject to gang sanctions. He is confined to his 7 x 11 foot cell for approximately 159 hours per week with no periods of darkness. The food has made Plaintiff sick, his mattress is thin and he is not allowed a pillow, he has limited access to medical services, showers, and the library, his yard space and allowable activities are limited, numerous restrictions are placed on his visitation, he can only receive one personal property package per year, and he is subjected to extensive searches prior to and after transport from his cell.

Plaintiff sues Defendants in their individual and official capacities and seeks declaratory and injunctive relief, expungement of his records, damages and costs for violation of his First, Eighth, and Fourteenth Amendment rights.

**D.      First Amendment**

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the

5

corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974); see also Clement v. Cal. Dep't. of Corr., 364 F.3d 1148, 1151 (9th Cir. 2004).

Freedom of association is one of the rights least compatible with incarceration, Overton v. Bazetta, 539 U.S. 126, 131 (2003), and among the many people with whom Plaintiff is not free to associate in prison are gang members. Stewart v. Alameida, 418 F.Supp.2d 1154, 1163-1164 (N.D. Cal. 2006). Therefore, Plaintiff fails to state a freedom of association claim based on his inability to interact with gang members. Stewart, 418 F.Supp.2d at 1164 (gang validation for associating with known gang members is a "useful prophylactic").

An inmate does not have an "abstract, freestanding right to a law library or legal assistance." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010)(citing Lewis v. Casey, 4518 U.S. 343, 351 (1996)). However, he may establish that prison officials unconstitutionally denied him access to the courts if he can "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Hebbe, 627 F.3d at 342.

Here, Plaintiff indicates that he was only allowed access to the law library when he had an impending court deadline. However, he does not plead facts to indicate this restricted access "hindered his efforts to pursue a legal claim." Hebbe, 627 F.3d at 342. Therefore, he fails to state a claim based on the denial of access to the courts. These claims are not cognizable and should be dismissed.

**E.    Fourth Amendment – Strip Searches**

Strip searches do not generally violate the Fourth Amendment rights of prisoners or pretrial detainees unless they are "excessive, vindictive, harassing, or unrelated to any legitimate penological interest." See Michenfelder v. Sumner, 860 F.2d at 332-333 (9th Cir. 1988); Shorter, -- F.Supp.3d --, at *11 (C.D. Cal. April 21, 2015). Courts have found strip searches to be excessive, vindictive, or harassing where they are tactile, as opposed to visual, see United States v. Fowlkes, 770 F.3d 748, 757-758 (9th Cir. 2014); Byrd v. Maricopa Cnty. Sheriff's Dept., 629 F.3d 1135, 1142 (9th Cir. 2011); where they

6

are performed in view of many other people, see Byrd, 629 F.3d at 1143; or where they were carried out with reckless disregard to the risk of physical harm or emotional trauma of the person searched, see Fowlkes, 770 F.3d at 760-761; Vaughan v. Ricketts, 859 F.2d 736, 741 (9th Cir. 1988).

However, intercepting or deterring the smuggling of contraband has long been considered a legitimate penological interest justifying strip searches. Florence v. Bd, of Chosen Freeholders of Cnty. of Burlington, 132 S.Ct. 1510, 1516 (2012); Bell v. Wolfish, 441 U.S. 520, 558 (1979); Bull v. City & Cnty. of San Francisco, 595 F.3d 964, 971 (9th Cir. 2010). The legitimacy of this interest does not wane even if prison officials do not reasonably suspect that the particular inmate being searched is concealing contraband or the prison lacks a well-documented smuggling problem. Florence, 132 S.Ct. at 1518; Bull, 595 F.3d at 979-980. Thus, a blanket policy of strip searching inmates or detainees does not become arbitrary just because guards have no individualized suspicion that an inmate has hidden contraband, or even had the opportunity to do so. Bell, 441 U.S. at 577-578 (upholding a blanket strip search policy of all inmates returning from contact visits); Bull, 595 F.3d at 980 (upholding a blanket strip search policy for pretrial detainees placed in general population); Michenfelder, 860 F.2d at 332 (upholding blanket policy of searching inmates coming or going from cells in maximum-security unit).

Here, Plaintiff indicates that he is subject to a visual strip search each time he leaves his cell or returns from yard. Longstanding Ninth Circuit precedent has upheld strip searches in precisely this context. Michenfelder, 860 F.3d at 332. Plaintiff does not allege circumstances suggesting the searches are performed with a vindictive or harassing motive. Rather, it appears that Plaintiff is searched in his cell, not in view of others, and that all inmates in SHU are subject to similar searches. Moreover, on the facts alleged, the interest in intercepting contraband appears to justify the attempt to detect it before Plaintiff is escorted to another part of the prison. The Court recognizes that even a visual strip search encroaches significantly on a person's privacy; however, such an encroachment, without more, is constitutional. Florence, 132 S.Ct. at 1518; Bull,

595 F.3d at 980. Based on these deficiencies the Court should dismiss Plaintiff's Fourth Amendment claim.

### F. Eighth Amendment – Conditions of Confinement

The Eighth Amendment "protects prisoners . . . from inhumane methods of punishment . . . [and] inhumane conditions of confinement." Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and severe, prison officials must provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994). The question is "whether [Plaintiff] was deprived of the 'minimal civilized measure of life's necessities.'" Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. Farmer, 511 U.S. at 837; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Johnson v. Lewis, 217 F.3d 726, 734 (9th Cir. 2000). Thus, to make a cognizable conditions of confinement claim, a plaintiff must show that defendants "had actual knowledge of plaintiff's basic human needs and deliberately refused to meet those needs. Whether an official possessed such knowledge 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" Johnson, 217 F.3d at 734 (citing Farmer, 511 U.S. at 842).

#### 1. Continuous Lighting

Constant illumination in a prison cell causing deleterious effects on a prisoner's health can violate the Eighth Amendment. Grenning v. Miller-Stout, 739 F.3d 1235, 1238 (9th Cir. 2014); Keenan v. Hall, 83 F.3d 1083, 1090 (9th Cir. 1996); cf. Chappell v. Mandeville, 706 F.3d 1052, 1057-1058 (9th Cir. 2013)(prison officials entitled to qualified immunity where prisoner did not claim any injury from 24-hour lighting).

Here, Plaintiff claims his cell at CCI is illuminated 24 hours per day, and that as a

result he suffers sleep deprivation, migraines, and unspecified physical discomfort. Because he indicates that the constant lighting has caused him harm, Plaintiff could potentially state a cognizable Eighth Amendment claim based on continuous lighting. However, he has not linked this claim to any Defendants. Therefore, these claims are not cognizable and should be dismissed.

### 2. Uncomfortable Mattress & Lack of a Pillow

Although sleeping without *any* mattress for a long period of time in unsanitary conditions can violate the Eighth Amendment, see Chappell, 706 F.3d at 1060, the same cannot be said of a long-term deprivation of a *comfortable* mattress, at least where cleanliness or some other factor is not also an issue. See Hendon v. Baroya, No. 1:05 cv 01247 2014 WL 4745921, at *3 (E.D. Cal. Sept. 23, 2014)("a comfortable mattress is not required by the Eighth Amendment"); cf. Pierce v. Cnty. of Orange, 526 F.3d 1190, 1224 (9th Cir. 2008)(prison's failure to provide proper mattress to quadriplegic inmate gave rise to Eighth Amendment claim where inmate suffered bedsores as a result). The Court finds that a comfortable mattress and the presence of a pillow are simply not part of the "minimal civilized measure of life's necessities." See Faunce v. Gomez, 163 F.3d 605, at *1 (9th Cir. 1998)(unpublished disposition)(plaintiff deprived of, *inter alia*, comfortable mattress, did not show he was "deprived of basic human needs"). Comfort in bed is elusive, and inmates and free citizens alike are routinely obliged to endure physically uncomfortable sleeping arrangements for long periods of time. In the absence of evidence that Plaintiff's mattress is exacerbating a grave physical condition such as that in Pierce, Plaintiff fails to state an Eighth Amendment claim on the basis of having a thin mattress.

### 3. Exercise Time

The Eighth Amendment entitles prisoners to some amount of regular outdoor exercise. See, e.g., Thomas v. Ponder, 611 F.3d 1144, 1152 (9th Cir. 2010)(health risk posed by long-term denial of outdoor exercise is obvious and may rise to the level of a constitutional violation); Pierce, 526 F.3d at 1208; Spain v. Procunier, 600 F.2d 189, 199-

9

200 (9th Cir. 1979). However, a prisoner's right to outdoor exercise is not "absolute and indefeasible." Norwood v. Vance, 591 F.3d 1062, 1068 (9th Cir. 2009). "[I]nclement weather, unusual circumstances, or disciplinary needs" may all justify a prison in temporarily suspending inmates' opportunities to exercise. Norwood, 591 F.3d at 1072 (citing Spain, 600 F.2d at 199); see also Allen v. Sakai, 48 F.3d 1082, 1088 (9th Cir. 1994)("the practical difficulties that arise in administering a prison facility from time to time might justify an occasional and brief deprivation" of exercise privileges).

Although the Ninth Circuit has declined to set a minimum amount of out-of-cell exercise time, a recurring benchmark is 1 hour per day, 5 days per week under ordinary circumstances. See Spain, 600 F.2d at 199; Allen, 48 F.3d at 1088; Shorter v. Baca, -- F.Supp.3d --, at *10 (C.D. Cal. 2015); but see Pierce, 526 F.3d 1190, 1212 (agreeing that typical minimum is 5-7 hours/week, but reinstating court order requiring 2 hours per week where inmates were actually only receiving ninety minutes per week).

Prisons have discretion to curtail access to particular exercise equipment or weights based on security concerns. Pierce, 526 F.3d at 1212. However, at least some exercise equipment appears to be required to give the Eighth Amendment's protections meaning. Pierce, 526 F.3d at 1212 n. 22; Antonetti v. Skolnik, 748 F.Supp.2d 1201, 1217 (D.Nev. 2010)(plaintiff stated Eighth Amendment claim where the only "exercise" opportunity he had was "to stand in a completely enclosed cage alone, in extreme heat or cold with no water, no shade, no exercise equipment, and no urinals."); cf. Cooper v. CDCR, No. 2:13-cv-01233 2014 WL 1125301, at *3 (E.D. Cal. Mar. 20, 2014)("merely denying prisoners access to exercise equipment, by itself, is not a sufficiently serious deprivation" to violate the Eighth Amendment).

Here, although Plaintiff does not receive daily exercise time, the 6-9 hours he spends outside each week is within the range courts in this circuit have found constitutionally adequate. Likewise, while the amenities in Plaintiff's exercise cage are minimal, Plaintiff does have access to a toilet, one piece of exercise equipment, and some social interaction, thus distinguishing his circumstances from the kind the Antonetti

court concluded gave rise to an Eighth Amendment claim. Therefore, Plaintiff fails to state an Eighth Amendment claim based on the denial of exercise opportunities.

### 4. Visitation

Inmates do not have a clearly established constitutional right to receive visits, in particular contact visits. Dunn v. Castro, 621 F.3d 1196, 1202 (9th Cir. 2010); Toussaint v. McCarthy, 801 F.2d 1080, 1114 (9th Cir. 1986)("to the extent that denial of contact visitation is restrictive and even harsh, it is part of the penalty that criminals pay for their offenses against society"). The Supreme Court has upheld a variety of restrictions on visitation (including denials of contact visitation, as well as limitations on the people allowed to visit an inmate) against First, Eighth, and Fourteenth Amendment challenges. Overton v. Bazzetta, 539 U.S. 126, 133 (2003). Only where *all* visitation privileges have been revoked permanently or for a substantial period of time will the deprivation take on constitutional proportions. See Overton, 539 U.S. at 130; Dunn, 621 F.3d at 1204.

Plaintiff cannot state a cognizable constitutional claim on the basis of a denial of contact visitation and this claim should be dismissed.

### 5. Telephone Use

Generally, deprivation of access to the telephone, on its own, does not give rise to a constitutional violation. Williams v. ICC Committee, 812 F.Supp. 1029, 1034 (N.D. Cal. 1992); Haynes v. Sisto, Civ. No. S-08-2177 2010 WL 2076970 (E.D. Cal. May 24, 2010)(concluding that 4.5 month deprivation of "access to telephone calls and visitors" did not state an Eighth Amendment claim); see also Overton, 539 U.S. at 132 (finding that where one means of communication is cut off, alternatives "need not be ideal," but only "available"); Valdez v. Rosenbaum, 302 F.3d 1039, 1048 (9th Cir. 2002)(First Amendment right to communicate with family did not guarantee particular means of communication). However, lack of access to *any* means of communicating with people outside of prison may be unconstitutional. See Overton, 539 U.S. at 135 (suggesting that access to alternatives was part of justification for concluding visitation restrictions were constitutional); Ashker v. Brown, No. C 09-5796 2013 WL 1435148 (N.D. Cal. April 9,

11

2013)(concluding that "prolonged social isolation," which included lack of telephone access and contact visits, met objective prong of Eighth Amendment test).

Here, Plaintiff has not pleaded sufficient facts to demonstrate that his lack of telephone access amounted to cruel and unusual punishment. Although Overton and Ashker suggest that the deprivation of contact with people outside of prison can contribute to an Eighth Amendment violation, Plaintiff does not appear to have been deprived of contact. As discussed above, he indicates he still sees his family during non-contact visits and may use the phone on an emergency basis. As the Supreme Court concluded, prisoners need only have access to *some* means of communication, not necessarily one that is completely effective. Here, the non-contact visitation policy meets this low threshold, so the telephone restrictions in SHU are not unconstitutional.

### 6. Food Quality

While the Eighth Amendment requires jail officials to provide inmates with nutritionally adequate meals, Foster v. Runnels, 554 F.3d 807, 812-813 (9th Cir. 2009), it does not require that the food be tasty, varied, or aesthetically pleasing. See LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993). For an inmate's complaints about his diet to rise to the level of a constitutional deprivation, the plaintiff must show that the food he received was not adequate to maintain his health, e.g., by alleging facts indicating he lost weight or incurred health problems. See Foster, 554 F.3d at 813 n.2; LeMaire, 12 F.3d at 1456; Stewart v. Block, 938 F.Supp. 582, 588 (C.D. Cal. 1996). In addition, the inmate must show that the responsible prison officials had a "sufficiently culpable state of mind," and were deliberately indifferent to the inmate's health and safety. Farmer, 511 U.S. at 834.

Here, Plaintiff's complains that the fruit is usually rotten, and that meals are generally served cold in SHU do not give rise to an Eighth Amendment claim. Meanwhile, his assertion that he came down with a bacterial infection as a result of eating the food at Corcoran is conclusory and lacks any factual support. Plaintiff does not describe what he ate, when he became ill, the symptoms of his illness, why he

12

believes there was a causal connection between the illness and the meal, and what makes him think prison staff acted with a culpable state of mind. Absent such details, the court finds that Plaintiff fails to state a cognizable claim. However, the Court will give Plaintiff an opportunity to amend his claim to provide the cure the deficiencies outlined above. Plaintiff must also link this claim to particular defendants.

### 7. Access to Programming

The Ninth Circuit has held that the lack of rehabilitative programs "simply does not amount to the infliction of pain" and does not deprive an inmate of the minimal civilized measure of life's necessities. Hoptowit v. Ray, 682 F.2d 1237, 1254 (9th Cir.1982); Hoban v. CDCR, No. 1;09-cv-1752 2010 WL 5136026, at *4 (E.D. Cal. Dec. 10, 2010); see also Stewart v. Winter, 669 F.2d 328, 336 n. 19 (5th Cir.1982) ("[F]ailure to provide a rehabilitation ... does not, by itself, constitute cruel and unusual punishment."). Accordingly, Plaintiff's lack of access to "sports, recreational, or entertainment activities," or other programming does not state an Eighth Amendment claim.

### G. Due Process

#### 1. Review of SHU Confinement

In its prior screening orders, the Court found Plaintiff stated a cognizable due process claim against Defendants Castorena, Escobar, Lambert, Mahoney, Cano, Kraay, Galaviz, Rousseau, Gipson, Taber, Jennings, Sanchez, Pina, Pacillas, Lackovic, Smith, Kellogg, McGuire, Mayo, Mata, Holland, Prince, and Chavez in relation to the allegation that he received hearings and periodic reviews and notice of the reasons supporting his SHU confinement but that he was not given an opportunity to present his views at the hearings and there is no evidence to support his gang classification.. (ECF Nos. 11, 15.) The Court granted Plaintiff one final opportunity to amend. In amending, Plaintiff added Defendants Vasquez, Edgar, Garcia, Mayfield, and Patterson alleging essentially the same facts regarding the violation of his due process rights. Therefore, in its order screening the third amended complaint, the Court again found that Plaintiff has also stated a cognizable due process claim against these Defendants.

13

The Court so found despite questions as to the reasonable likelihood so many Defendants, acting in groups independently of other groups and at different times, proceeded to deprive Plaintiff of his due process rights in precisely the same manner, over and over again. Plaintiff made allegations in language which, for the reasons stated previously, reflected constitutional violations. As noted, the Court must accept these allegations as true for screening purposes, and so Plaintiff was permitted to proceed with them and Defendants to respond and challenge them.

Defendants did, in fact, challenge these allegations and the District Judge dismissed the claims arising out of the periodic reviews occurring on August 2, 2012; December 20, 2012; June 20, 2013; July 23, 2013; and January 28, 2014. (ECF No. 54.) As a result, Defendants Escobar, Lambert, Mahoney, Cano, Kraay, Rousseau, Gipson, Taber, Sanchez, Pacillas, Lackovic, Smith, Kellogg, McGuire, Mayo, and Mata were dismissed. (See ECF No. 60.) These claims are therefore not cognizable.

Additionally, Plaintiff was permitted to file a supplemental fourth amended complaint. (ECF No. 60.) In this supplemental complaint, Plaintiff added allegations regarding two additional periodic reviews of his SHU placement occurring after he initiated this action. (ECF No. 53.) These allegations were permitted to proceed against Defendants Davey, Romo, Oliveira, Perez, Campbell, Wilson and Lester. (ECF No. 60.) However, Defendant Romo was later dismissed pursuant to Federal Rule of Civil Procedure 4(m). (ECF No. 84.) Plaintiff will not now be permitted to proceed further against this defendant.

### ii. Supervisory Liability

Government officials may not be held liable for the actions of their subordinates under a theory of *respondeat superior*. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 691 (1978). Since a government official cannot be held liable under a theory of vicarious liability in § 1983 actions, Plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions by linking each named Defendant with some affirmative act or omission that demonstrates a violation of

14

1  Plaintiff's federal rights. Iqbal, 556 U.S. at 676.

2  Liability may be imposed on supervisory defendants under § 1983 only if the supervisor: (1) personally participated in the deprivation of constitutional rights or directed the violations or (2) knew of the violations and failed to act to prevent them. Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff alleges that Defendant Beard created the policy that prevented Plaintiff from presenting his views at the hearings. Defendant knew that the review hearings were "utterly meaningless, unfair, and arbitrary," that Plaintiff was subjected to SHU confinement without the requisite evidence of gang misconduct, and of his subordinates' actions yet failed to prevent the other Defendants from committing their unconstitutional conduct. (ECF No. 16 at 17.) Based on these allegations, Plaintiff has stated a due process claim against Defendant Beard. See OSU Student Alliance v. Ray, 699 F.3d 1053, 1076 (9th Cir. 2012) ("When a supervisory official advances or manages a policy that instructs its adherents to violate constitutional rights, then the official specifically intends for such violations to occur."); see also Taylor, 880 F.2d at 1045.

### iii. Official Capacity

Plaintiff sues Defendants in their individual and official capacities. Plaintiff may not bring suit for monetary damages against Defendants in their official capacities. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted).

### iv. Equal Protection

In its prior screening order, the Court concluded that Plaintiff stated a cognizable equal protection claim. (ECF No. 22.) However, this claim later was dismissed by the District Judge on a motion to dismiss brought by Defendants. (ECF No. 54.) Based on that ruling, the equal protection claim is not cognizable.

####            v.     **Declaratory Relief**

In addition to damages, Plaintiff seeks a declaration that Defendants violated his constitutional rights. Plaintiff's claims for damages necessarily entail a determination of whether his rights were violated, and therefore, his separate request for declaratory relief is subsumed by those claims. Rhodes v. Robinson, 408 F.3d 559, 566 n.8 (9th Cir. 2005).

####            vi.     **Injunctive Relief**

Plaintiff seeks unspecified injunctive relief. Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." Winter v. Natural Res. Def. Council, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter, 555 U.S. at 20).

Plaintiff fails to allege facts with respect to any of the above elements. Therefore, Plaintiff does not demonstrate a need for and entitlement to injunctive relief. These claims should be dismissed.

### III.    **Conclusion**

In sum, Plaintiff's fourth amended complaint states cognizable due process claims for damages against the following defendants in their individual capacities: Beard, Castorena, , Galaviz, Jennings, Pina, , Holland, Prince, Chavez, Vasquez, Edgar, Garcia, Mayfield, Patterson, Davey, Oliveira, Perez, Campbell, Wilson and Lester. The remaining claims are not cognizable as pled. Plaintiff has had multiple opportunities to amend, and further leave does not appeal likely to cure the defects in the non-cognizable claims. They should be dismissed with prejudice.

Accordingly, IT IS HEREBY RECOMMENDED that this action continue to proceed only on Plaintiff's due process claims for damages against the following defendants in their individual capacities: Beard, Castorena, , Galaviz, Jennings, Pina, , Holland, Prince,

Chavez, Vasquez, Edgar, Garcia, Mayfield, Patterson, Davey, Oliveira, Perez, Campbell, Wilson and Lester.; and that all other claims and defendants be DISMISSED with prejudice.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: February 22, 2018              /s/ *Michael J. Seng*
                                      UNITED STATES MAGISTRATE JUDGE