UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN VALDEZ,<br><br>           Plaintiff,<br><br>   v.<br><br>JEFFREY BEARD, et al.,<br><br>           Defendants. | **1:14-cv-01839-AWI-JLT (PC)**<br><br>**ORDER GRANTING PLAINTIFF'S MOTION; AND**<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(ECF NOS. 85, 106)**<br><br>**FOURTEEN-DAY DEADLINE** |

Plaintiff proceeds on a due process claim against several defendants premised on four periodic reviews of plaintiff's placement in the Security Housing Unit ("SHU") due to his gang validation. In their instant motion for summary judgment, defendants Beard, Castorena, Galaviz, Jennings, Pina, Holland, Prince, Chavez, Vasquez, Edgar, Garcia, Mayfield, Patterson, Davey, Oliveira, Perez, Campbell, Wilson and Lester argue that plaintiff received all the due process protection to which he was entitled. Alternatively, they assert that they are entitled to qualified immunity. Plaintiff opposes the motion.

The Court finds there is no dispute of material fact as to whether plaintiff received all the process that he was due. Thus, the Court recommends that the defendants' motion for summary judgment be granted.

1

**I.      Plaintiff's Allegations**

In the fourth amended complaint, plaintiff accuses the defendants of violating his due process rights in the context of Institutional Classification Committee ("ICC") hearings convened to determine whether plaintiff should be retained in the SHU based on his gang validation. The specific instances at issue here are: (1) an ICC hearing held on June 24, 2014, where the defendants decided to retain plaintiff in the SHU; (2) an October 6, 2014, confirmation of the ICC's June 24, 2014, decision; (3) an ICC hearing held on January 7, 2015, where the defendants decided to retain plaintiff in the SHU; (4) an ICC hearing held on July 14, 2015, where the defendants decided to retain plaintiff in the SHU; and (5) an ICC hearing held on March 3, 2016, where the defendants decided to retain plaintiff in the SHU.

At each of these ICC hearings, plaintiff claims that he was denied a meaningful opportunity to be heard in violation of his due process rights. He also claims these hearings were meaningless gestures in that the decision to retain had already been determined prior to the hearings.

By way of relief, plaintiff seeks declaratory relief, injunctive relief (to include his release from the SHU), and damages.

**II.     Relevant Procedural Background**

Plaintiff initiated this action on November 21, 2014, and filed a first amended complaint ("FAC") on January 23, 2015, before his original complaint was screened. (ECF Nos. 1, 8.) On May 7, 2015, the Court screened the FAC and found it to state cognizable claims against some defendants but not others. The Court directed Plaintiff to file an amended pleading or to notify the court of his willingness to proceed on the FAC as screened.

On June 25, 2015, Plaintiff filed a second amended complaint. (ECF No. 14.) The Court screened it on July 28, 2015 and found it to state cognizable claims against some defendants but not others. (ECF No. 15.) The Court again directed Plaintiff to file an amended pleading or to notify the court of his willingness to proceed on the second amended complaint as screened.

Plaintiff filed the third amended complaint on August 24, 2015. (ECF No. 16.) The Court screened this pleading on October 15, 2015 and found it to state cognizable due process and equal

protection claims against the following Defendants: Beard, Castorena, Escobar, Lambert, Mahoney, Cano, Kraay, Galaviz, Rousseau, Gipson, Taber, Jennings, Sanchez, Pina, Pacillas, Lackovic, Smith, Kellogg, McGuire, Mayo, Mata, Holland, Prince, Chavez, Vasquez, Edgar, Garcia, Mayfield, and Patterson. (ECF No. 18.) Service was ordered November 2, 2015. (ECF No. 22.)

Defendants appeared on January 6, 2016, by filing a motion to dismiss. (ECF No. 26.) On June 21, 2016, the then-assigned magistrate judge issued findings and recommendations to deny the motion to dismiss as to plaintiff's due process claim and to grant it as to the equal protection claim. (ECF No. 42.)

District Judge Anthony W. Ishii adopted the findings and recommendations in part on September 16, 2016. (ECF No. 54.) Judge Ishii adopted the recommendation to dismiss the equal protection claim but found that defendants were entitled to qualified immunity as to some of the conduct underlying the due process claim, which is premised on the periodic reviews of plaintiff's placement in the SHU due to his gang validation. Specifically, the district judge concluded that defendants were entitled to qualified immunity for conduct pre-dating Brown v. Oregon Dept. of Corr., 751 F.3d 983 (9th Cir. Apr. 29, 2014), but not as to conduct post-dating that decision. (ECF No. 54.)

On October 18, 2016, the then-assigned magistrate judge granted plaintiff's request to file a fourth complaint. (ECF No. 60.) In this supplemental complaint, plaintiff added allegations regarding two additional periodic reviews of his SHU placement occurring after he initiated this action. (ECF No. 53.)

Plaintiff's request to file a fifth amended complaint was denied on December 26, 2017. (ECF Nos. 74, 89.)

The defendants filed their answer on January 12, 2017, and the instant motion for summary judgment was filed on November 30, 2017. (ECF Nos. 69, 85.) Plaintiff has filed two oppositions, the first on April 16, 2018, and the second on May 7, 2018. (ECF Nos. 101, 105.) He has also filed a request to deem the second opposition timely filed. (ECF No. 106.) The defendants filed their

3

reply on April 20, 2018. (ECF No. 103.) This motion is fully briefed and ready for disposition.

**III.   Legal Standards**

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the

4

allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587; Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some

metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on November 30, 2017 (ECF No. 85-1), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

## IV. Undisputed Facts

Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation, was validated as a Northern Structure prison gang member in February 2010. Fourth Am. Compl. § IV; Pl.'s Dep. at 16:18-22 (Decl. of Lucas L. Hennes in Supp. of Defs.' Mot. Summ. J. (ECF No. 85-5), Ex. A). Because of the gang validation, he was assigned to serve an indeterminate term in the SHU at California State Prison – Corcoran ("CSP-Cor") on July 23, 2012.[1] Fourth Am. Compl. at 4, 8. Validated prison gang members are serious threats to the safety of the institution. Pl.'s Dep. at 20:23—21:5.

Plaintiff's gang validation is reviewed approximately every 180 days and annually. Fourth Am. Compl. at 8:21-23. This action is premised on several ICC hearings occurring between June 2014 and March 2016.

The first ICC hearing was held on June 24, 2014, with defendants Prince, Chavez, Galaviz, Holland, Jennings, and Pina in attendance. Pl.'s Dep. at 22:6-17. At this hearing, the defendants followed CDCR policy in concluding that plaintiff's gang validation should continue based on documented gang activity less than six years old. Pl.'s Dep. at 22:6-23:10, 46:6-13; Hennes Decl., Ex. B.

On October 6, 2014, defendant Castorena endorsed plaintiff to serve an indeterminate SHU term based on the June 24, 2014, ICC hearing. Pl.'s Dep. at 25:19—26:8; Decl. of B. Castorena in Supp. of Defs.' Mot. Summ. J. (ECF No. 85-4) Ex. A. Castorena, at the time, was employed at

---

[1] Plaintiff's challenge to the gang validation process and the decision to place him in administrative segregation were asserted in a separate action, Valdez v. Cate, 2:12-cv-1352-JAM-CMK.

6

CSP-Cor as a Classification Staff Representative ("CSR"). Castorena Decl. ¶ 2. When a CSR endorses an inmate for retention in the SHU, as Castorena did here, the CSR reviews the documentation used by the ICC to ensure that the inmate received all process that was due. Id. ¶ 4. If the documentation cited by an ICC to retain the inmate in the SHU is accurate and all procedural requirements were met, the CSR does not have discretion to reverse or alter the decision. Id.

The second ICC hearing was held on January 7, 2015, with defendants Vasquez, Holland, Garcia, Edgar, Patterson, and Maxfield in attendance. Pl.'s Dep. at 27:3-9; Fourth Am. Compl. at 16. At this hearing, the defendants followed CDCR policy in concluding that plaintiff's gang validation should continue and he should be retained in SHU based on documented gang activity less than six years old. Pl.'s Dep. at 27:14-20, 53:20-25; Hennes Decl., Ex. B.

The third ICC hearing was held on July 14, 2015, with defendants Davey, Holland, Patterson, and Oliveira in attendance. Pl.'s Dep. at 29:7-21; Fourth Am. Compl. at 16-17. At this hearing, the defendants followed CDCR policy in concluding that plaintiff's gang validation should continue and he should be retained in SHU based on documented gang activity less than six years old. Pl.'s Dep. at 29:7—30:9, 56:21—57:5; Hennes Decl., Ex. B.

The fourth ICC hearing was held on March 3, 2016, with defendants Perez, Campbell, Wilson, and Lester in attendance. Pl.'s Dep. at 31:23-32:9; Fourth Am. Compl. at 17. At this hearing, the defendants followed CDCR policy in concluding that plaintiff's gang validation should continue and that he should be retained in SHU based on documented gang activity less than six years old. Pl.'s Dep. at 31:23—33:1, 60:2-7; Hennes Decl., Ex. B.

On April 8, 2016, plaintiff attended a specialized ICC hearing regarding his placement in SHU. Pl.'s Dep. at 34:19—35:6. The ICC released plaintiff from SHU and transferred him to a general population yard.

Plaintiff received adequate notice prior to each of these hearings. Fourth Am. Compl. at 14, 16-18. Additionally, each defendant properly reviewed plaintiff's case factors during the ICC hearings. Pl.'s Dep. at 24:2-13, 28:24—29:2, 31:11-14, 37:4-9, 61:11-18. Lastly, plaintiff was provided an opportunity to state on the record that he disagreed with the decision to retain him in

7

the SHU. Pl.'s Dep. at 23:3-10 (the June 24, 2014, ICC hearing), 28:12-17 (the January 7, 2015, ICC hearing), 30:10-11 (the July 14, 2015, ICC hearing); 32:19-24 (the March 3, 2016, ICC hearing).

Plaintiff was not, however, "allowed to offer any legitimate rebuttal." Pl.'s Dep. at 28:12-20. He was "simply asked if [he] agreed [with the decision to retain him] and [the defendants] wouldn't consider any arguments that [he] would try to make." Id. This was because plaintiff was already deemed "validated, and any of [his] disputes would not be heard." Id. at 23:6-13.

## V. Analysis

Defendants move for summary judgment and argue Plaintiff received all the process to which he was entitled at the semi-yearly hearings: an informal non-adversary hearing, a reason for the segregation, and an opportunity to "voice his disagreement with the Defendants' decision to retain him in SHU." Defs.' Mot. Summ. J. at 6. In addition, there was some evidence to support the defendants' decision.

Plaintiff counters that he was not afforded an opportunity to offer a rebuttal at the disciplinary hearings to the effect that any cited gang-related conduct predated 2009 and that his record has been "immaculate" since then, negating any claim that plaintiff posed a current threat to institutional staff, himself, or any other inmates.[2] Pl.'s Dep. at 23:11-18; 25:2-6; 28:9-20; 30:7-19. He contends that his mere expression of disapproval with the ICC's decision to retain him in the SHU was insufficient to meet due process requirements. He also argues that, even if he was provided an opportunity to be heard, the ICC hearings were "meaningless gestures" because they were extremely brief and would have resulted in the same decision to retain him regardless "due to policy."

The Due Process Clause of the Fourteenth Amendment protects prisoners from being

---

[2] Plaintiff again claims that he was entitled to heightened procedural protections as set forth in Wolff, including a hearing with an opportunity to present witnesses and documentary evidence and a staff or inmate assistance to aid in collecting and presenting evidence. As plaintiff was previously informed, his placement in the SHU does not constitute an "atypical and significant hardship" on him requiring heightened procedural protections under Wolff. See Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997) ("California's policy of assigning suspected gang affiliates to the Security Housing Unit is not a disciplinary measure, but an administrative strategy designed to preserve order in the prison and protect the safety of all inmates.").

8

deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake. See Ingraham v. Wright, 430 U.S. 651, 672-73 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972); Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003); Neal v. Shimoda, 131 F.3d 818, 827 (9th Cir. 1997); Erickson v. United States, 67 F.3d 858, 861 (9th Cir. 1995); Schroeder v. McDonald, 55 F.3d 454, 462 (9th Cir. 1995); Tellis v. Godinez, 5 F.3d 1314, 1316 (9th Cir. 1993).

Liberty interests can arise both from the Constitution and from state law. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005); Hewitt v. Helms, 459 U.S. 460, 466 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Id. It also does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See Hewitt, 459 U.S. at 466-68; see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayse, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin, 515 U.S. at 481-84. Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007); Jackson, 353 F.3d at 755; Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003). When conducting the Sandin inquiry, Courts should look to Eighth Amendment standards as well as the prisoners' conditions of confinement, the

duration of the sanction, and whether the sanctions will affect the length of the prisoners' sentence. See Serrano, 345 F.3d at 1078; Ramirez, 334 F.3d at 861; Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996). The placement of an inmate in the SHU indeterminately may amount to a deprivation of a liberty interest of "real substance" within the meaning of Sandin. See Wilkinson, 545 U.S. at 224. The "atypicality" prong of the analysis requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner. See Carlo v. City of Chino, 105 F.3d 493, 499 (9th Cir. 1997). A plaintiff must assert a "dramatic departure" from the standard conditions of confinement before due process concerns are implicated. Sandin, 515 U.S. at 485–86; see also Keenan, 83 F.3d at 1088–89. "S*ome* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone." Chappell v. Mandeville 706 F.3d 1052, 1061 (9th Cir. 2013) (citing Wilson, 501 U.S. at 304).

To determine if the plaintiff's removal from general population constitutes an "atypical and significant hardship," the Court examines: (1) the extent of difference between segregation and general population; (2) the duration and intensity of the conditions confinement; and (3) whether the sanction extends the length of the prisoner's sentence. Cepero, 2015 WL 1308690 at *14; see also Sandin, 515 U.S. at 486–87. "Typically, administrative segregation in and of itself does not implicate a protected liberty interest." Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir.2003). Furthermore, "the decision to hold an inmate in administrative segregation imposes few procedural burdens on prison officials." Cepero, 2015 WL 1308690 at *14. A prison official provides adequate due process by "holding an informal, non-adversarial evidentiary hearing within a reasonable time after administrative segregation begins." Id.

The assignment of validated gang members to the SHU is an administrative measure rather than a disciplinary measure, and is "essentially a matter of administrative segregation." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)). As such, plaintiff is entitled to the minimal procedural protections set forth in Toussaint, such as notice, an opportunity to be heard, and periodic review. Bruce, 351 F.3d at 1287 (citing Toussaint, 801 F.2d at 1100). Due process also requires that there be an evidentiary basis

for the prison officials' decision to place an inmate in segregation for administrative reasons. Superintendent v. Hill, 472 U.S. 445, 455 (1985); Toussaint, 801 F.2d at 1104-05. This standard is met if there is 'some evidence' from which the conclusion of the administrative tribunal could be deduced. Id. at 1105. The standard is only "minimally stringent" and the relevant inquiry is whether there is any evidence in the record that could support the conclusion reached by the prison decision-makers. Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard applies to an inmate's placement in the SHU for gang affiliation. See Bruce, 351 F.3d at 1287-88.

When a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner. See Hewitt, 459 U.S. at 476, abrogated in part on other grounds by Sandin, 515 U.S. 472 (1995); Mendoza v. Blodgett, 960 F.2d 1425, 1430 (9th Cir. 1992), abrogated in part on other grounds by Sandin, 515 U.S. 472; Toussaint, 801 F.2d at 1100, abrogated in part on other grounds by Sandin, 515 U.S. 472. The Supreme Court has stated that five days is a reasonable time for the post-placement review. See Hewitt, 459 U.S. at 477. Before the review, the prisoner must receive some notice of the charges and be given an opportunity to respond to the charges. See id. at 476; Mendoza, 960 F.2d at 1430-31; Toussaint, 801 F.2d at 1100. The prisoner, however, is not entitled to "detailed written notice of charges, representation of counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." Toussaint, 801 F.2d at 1100-01 (citations omitted).

After the prisoner has been placed in administrative segregation, prison officials must periodically review the initial placement. See Hewitt, 459 U.S. at 477 n.9; Toussaint, 801 F.2d at 1101. Annual review of the placement is insufficient. See Toussaint, 801 F.2d at 1101. However, the prisoner has no right to be present at the periodic review, nor does he have a right to submit additional statements or evidence. See Hewitt, 459 U.S. at 476, 477 n.9 ("This review will not necessarily require that prison officials permit the submission of any additional evidence or statements."); Edmonson v. Coughlin, 21 F. Supp. 2d 242, 253 (W.D.N.Y. 1998). Per Hewitt, a

decision to continue an inmate in administrative segregation could be based on the same facts and considerations that compelled the initial transfer. Hewitt, 459 U.S. at 476, 477 n.9.

The parties do not dispute that plaintiff received notice and an informal non-adversary hearing before each decision to retain him in the SHU. They also do not dispute that the ICC members reviewed plaintiff's file, complied with prison regulations, and granted plaintiff an opportunity to express his disagreement with the committee's decision to retain him in the SHU. The only issue in dispute here is whether this process, including the limited opportunity for plaintiff to voice his dissent, violated plaintiff's due process rights. Defendants contend that it does not, arguing that any statement beyond plaintiff's disagreement amounts to "additional evidence or statements," which Hewitt noted was unnecessary. Plaintiff argues that this process falls short of his rights, particularly in light of his nearly four-year confinement.

In Brown, the Ninth Circuit held for the first time that "a lengthy confinement without meaningful review may constitute atypical and significant hardship." 751 F.3d at 989-90. Plaintiff relies on this holding and the length of his confinement to argue that he was entitled to more due process protection than he received. He also argues that even if he was given more process, it would have been a "meaningless gesture" due to prison policy directing that he be retained in the SHU for six years due to his gang status.

Assuming as true as plaintiff alleges that the living conditions in the SHU were generally more restrictive than the general population, plaintiff has not met his burden to show that a genuine issue of material fact exists as to whether his placement in the SHU differs in such degree or duration as compared with the "ordinary incidents of prison life" to constitute protected liberty interests under the Due Process Clause. See Sandin, 515 U.S. at 484. In Brown, the inmate was placed in disciplinary, intensive management unit for twenty-seven consecutive months, consisting of solitary confinement twenty-three hours a day with strict limitations on time outdoors and restrictions on visitor access, law library access, group religious worship, education and vocational opportunities, telephone usage, and access to personal property. Plaintiff here has presented no evidence regarding the conditions he faced in the SHU, let alone conditions that might be akin to

those described in Wilkinson and Brown. Moreover, as noted above, for a non-disciplinary placement, Hewitt demonstrates that the inmate need not be given the opportunity to present witnesses or to make a statement and continued placement may be based upon the original evidence. Hewitt, 459 U.S. at 476, 477 n.9.

It is also true that plaintiff was confined in the SHU for a lengthy period and that "the duration of the condition" is a factor that the court must consider in determining whether plaintiff was entitled to additional due process protection. In Brown, however, the inmate was subjected to solitary confinement for "a fixed and irreducible period of confinement" of twenty-seven months. Plaintiff's confinement was neither fixed nor irreducible, as evidenced by the fact that he was released two years before the "mandatory" six-year minimum segregation for gang validated inmates that Plaintiff argues exists. His early-release also undermines his argument that the hearings were "meaningless gestures."

For these reasons, the Court concludes that plaintiff received all the due process that he was due for his continued non-disciplinary retention in the SHU based on his gang status. Defendants' motion for summary judgment should therefore be granted. Thus, the Court declines to consider the defendants' qualified immunity argument.[3]

**V.     Conclusion**

Based on the foregoing, the undersigned ORDERS that plaintiff's motion to have his opposition deemed timely filed (ECF No. 105) is GRANTED; and

The court RECOMMENDS that defendants' motion for summary judgment (ECF No. 85) be GRANTED and this action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings

---

[3] If considered, however, the Court would recommend that the defendants received the protections of qualified immunity because Brown does not speak to the process due an inmate retained in a non-disciplinary housing assignment based upon gang affiliation.

13

and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

   Dated: **August 27, 2018**　　　　　　　　　　/s/ Jennifer L. Thurston
                                                              UNITED STATES MAGISTRATE JUDGE